CREWS v. ILLINOIS COMMERCIAL MEN'S ASS'N.

(District Court, D. Nebraska, Hastings Division. December 21, 1916.)

INSURANCE ⬅627(1)—SUIT AGAINST FOREIGN CORPORATION—SERVICE OF PROCESS.

Under Nebraska statutes relating to service on insurance companies and other corporations, Rev. St. Neb. 1913, §§ 7635, 7636, and section 3172, providing that any one, who by authority receives money from another to be transmitted to an insurance company for a policy, shall be deemed an agent, a policy holder of a foreign mutual assessment life company, who, having a single blank application, procured another to fill it out, and forwarded it with the initial fee, but without letter, to the company, cannot, by reason of such transaction, be considered an agent on whom service may be made a year afterward in an unrelated case.

At Law. Action by Anna D. Crews against the Illinois Commercial Men's Association. On objection by defendant to jurisdiction. Objection sustained.

Stiner & Boslaugh, of Hastings, Neb., for plaintiff.
Tibbets, Morey, Fuller & Tibbets, of Hastings, Neb., for defendant.

MUNGER, District Judge. An objection to jurisdiction over the defendant is based on the service of summons in this case. The de-

fendant is a foreign insurance company. The plaintiff relies on section 7635, Rev. St. Neb., providing, "When the defendant is an incorporated insurance company, and the action is brought in a county in which there is an agency thereof, the service may be upon the chief officer of such agency," and on section 7636, "When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent," and also on section 3172, which provides that "any person, * * * who shall with authority receive or receipt for money from other persons to be transmitted to any such company * * * for a policy or policies of insurance, * * * shall be deemed to all intents and purposes an agent * * * of such company."

The plaintiff shows that there was service in this case upon a policy holder, who had presented a blank application to another person, and solicited him to fill out the application, had received $2 from such person for the initial payment, and had transmitted the application and money to the insurance company, who accepted it and issued a policy thereon to the third person.

The defendant shows that it is a mutual assessment company, organized under the laws of Illinois, and having its headquarters there, and accepting as policy holders only traveling salesmen, and it has but one method of doing business in procuring new members. That method is to have the applicant mail to the company his written application, with membership fee of $2, and then having the board of directors act upon the application. No solicitors or agents, in the common meaning of the word, are employed. In this case the company had sent out a circular letter to the policy holders, in September, 1914, relating to a railway mileage question pending before the Interstate Commerce Commission, and one of them came into the hands of William Ray a policy holder in Nebraska. The following words were a part of this letter:

"Won't you kindly use the inclosed application to get one new member for the association? It will help us out on the extra expense of getting out this letter, which is done for the good of all traveling men. $2 will pay his membership fee and carry his insurance to January 15th."

William Ray solicited John Ray to become a member, and John Ray filled out the blank application and paid William Ray $2, and this was sent to the company at Chicago, in an envelope which contained nothing else. The company accepted of John Ray the application, and issued him a policy, and thereafter dealt with him as a policy holder.

No other act of William Ray appears, upon which is based a claim of his agency for the company. The date of the application by John Ray was in October, 1914, and the policy was issued to him in the same month.

The date of service of summons in this case was in October, 1915, and the return shows it was served on "William W. Ray, agent of the said Illinois Commercial Men's Association, no president, secretary, or other chief officer found in said county."

It is unnecessary to discuss the question whether a service is shown upon a "chief officer" of an agency, or service upon a "managing agent," if the service was upon one who was not an agent of any kind. Was William Ray an agent of the company when he was served? Accepting the definition of section 3172 of the Nebraska statutes and conceding that his receipt of money from John Ray was with authority, how long thereafter did his agency for the company continue? That transaction was completed as soon as the company issued the policy to John Ray. There was nothing in the transmission indicative of an intention to obtain other applications of insurance. No reason is perceived why William Ray should not be held to have been an agent of the company for 5 or 10 years after obtaining the application of John Ray, if he is held to be an agent after it was accepted.

John Ray and William Ray treated the transaction as closed when the policy was issued, and the proofs show that the company did not know that William Ray had acted in soliciting, obtaining, or remitting the application of John Ray. Certainly William Ray could not be said to continue to be the agent of the company, because of that transaction, so as to be amenable to service of summons a year thereafter, in a case arising upon an entirely different policy of insurance issued four years before. As his agency, if it had existed, had ceased, service of summons upon him was not service on the company. Campbell Printing Press & Manufacturing Co. v. Marder, Luse & Co., 50 Neb. 283, 69 N. W. 774, 61 Am. St. Rep. 573; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Continental Wall-Paper Co. v. Lewis Voight & Sons Co. (C. C.) 106 Fed. 550; 19 Encyc. Pl. & Pr. 658. The objections to jurisdiction will be sustained.